UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW A. ADORJAN,

        Plaintiff,

v.                                    Case No. 3:20-cv-525-J-34JBT

ARMOR CORR. HEALTH INC.,

        Defendant.

_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff Andrew Adorjan, an inmate of the Florida penal system, initiated this action by mailbox rule on May 22, 2020, when he filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Complaint; Doc. 1), while also seeking to proceed in forma pauperis (Motion; Doc. 2). Adorjan names Armor Correctional Health Inc. (Armor) as the sole defendant. He asserts Armor was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. As relief, Adorjan requests compensatory and punitive damages.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B); 1915A.  Additionally, the Court must read a plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v.

Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Central State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 328 (1989)).  Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. See L.S.T., Inc. v. Crow, 49 F.3d 679, 684 (11th Cir. 1995) (per curiam); Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). As such, "'conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.'" Rehberger v. Henry Cty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (citation omitted).

In the Complaint, Adorjan alleges that on November 26, 2019, he was attacked, outside of jail and prior to his incarceration, and suffered a broken right wrist. Complaint

2

at 7. Adorjan immediately went to the emergency room, where a doctor placed a temporary splint on his harm. Id. According to Adorjan, he wanted to get a solid cast and have his arm placed in traction, as the emergency doctor recommended. Id. But, he was unable to do so prior to his arrest on December 6, 2019, because he could not get in contact with an orthopedic doctor despite calling several times and visiting a doctor's office. Id. at 7-8. Upon his arrest, Adorjan was incarcerated in the Duval County Jail from December 6, 2019, through January 22, 2020. Id. at 7. During that time, Adorjan avers that Armor sent him to the emergency room for x-rays and a new temporary splint, but he still was not "put in traction to [align] broken bones or given a solid cast." Id. at 8. While at the emergency room, the doctor allegedly told Adorjan that Adorjan needed to go to the orthopedic department within four days for further treatment. Id. However, Adorjan asserts that Armor never sent him to an orthopedic doctor despite the emergency doctor's order. Id. Adorjan contends that he submitted numerous sick call requests and grievances seeking further treatment but was not sent back to the hospital until January 17, 2020. Id. At that January 17th appointment, Adorjan states that the doctor told him Armor should have sent Adorjan to the hospital earlier to place his wrist in traction to align the broken bones. Id. Yet, after x-raying Adorjan's arm, the doctor allegedly discarded Adorjan's temporary splint and told Adorjan that the broken bones were healing. Id. The doctor did not give him a brace to wear or a cast and sent him back to jail. Id. Adorjan asserts that Armor's failure to treat him exacerbated his wrist injuries, causing him constant pain and swelling, loss of functionality, and mental anguish. Id. at 8-9.

Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [jail] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'"

Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429

U.S. 97, 102 (1976)). The Eleventh circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment

to rise to the level of a constitutional violation, the care must be 'so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d

1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute

deliberate indifference, as can a doctor's decision to take an easier and less efficacious

course of treatment" or fail to respond to a known medical problem). However, the law is

well settled that the Constitution is not implicated by the negligent acts of corrections

officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986);

Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections

of the Due Process Clause, whether procedural or substantive, are just not triggered by

lack of due care by prison officials."). A complaint that a physician has been negligent "in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Although Armor is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state … is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at *3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like

Corizon, the private entity is treated as the functional equivalent of the government for which it works.") (citation omitted), aff'd (11th Cir. Jan. 13, 2017).

Where a deliberate indifference medical claim is brought against an entity, such as Armor, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. Of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir.

2016) (stating <u>Monell</u> "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of <u>employees</u> of the [government entity], and thereby make clear that [governmental] liability is limited to action <u>for which the [government entity] is actually responsible</u>.'" <u>Grech</u>, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (quoting <u>Pembaur</u>, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." <u>Bd. Of Cty. Comm'rs of Bryan Cty., Okla. V. Brown</u>, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." <u>Sewell</u>, 117 F.3d at 489. Last, "[t]o hold the [government

entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Armor's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Adorjan must plead that an official policy or a custom or practice of Armor was the moving force behind the alleged federal constitutional violation.

Upon review, Adorjan has neither identified an official Armor policy of deliberate indifference nor an unofficial Armor custom or practice that was "the moving force" behind any alleged constitutional violation. Armor cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Armor to provide medical care to inmates. Adorjan's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Armor had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). In consideration of the above analysis, the Court finds that Adorjan has failed to establish a claim that Armor violated his Eighth Amendment rights, and this action is due to be dismissed.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     This case is hereby **DISMISSED WITHOUT PREJUDICE**.

2.     The Clerk of Court shall enter judgment dismissing this case without prejudice, terminating any pending motions, and closing the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of June, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

c:  Andrew A. Adorjan #J59402

10